UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MIAMI-LUKEN, INC.,                      Case No. 1:16-mc-012

      Plaintiff,                           Dlott, J.
                                         Bowman, M.J.
    v.

UNITED STATES
DEPARTMENT OF JUSTICE,
DRUG ENFORCEMENT ADMINISTRATION

      Defendant.

**MEMORANDUM ORDER**

Pursuant to custom and practice, this miscellaneous action has been referred to the undersigned magistrate judge. The matter was initiated by the Plaintiff in order to seek this Court's assistance in compelling the Defendant to comply with an administrative subpoena. Although the type of administrative subpoena involved is relatively unusual, this Court grants in part the Plaintiff's motion to enforce the subpoena tor the reasons that follow.[1]

**I.    Background**

Plaintiff, Miami-Luken, Inc., incorporated in Dayton, Ohio, is a pharmaceutical wholesaler that has come under DEA scrutiny for allegedly "facilitat[ing] the diversion of significant quantities of the highly addictive pain killers, oxycodone and hydrocodone." (Doc. 11, PageID 202.) The DEA's investigation of Plaintiff has been ongoing since

---

[1]The undersigned considers this miscellaneous matter to be non-dispositive, to the extent that it is analogous to the enforcement of a civil subpoena issued by another court, or to the enforcement of an investigatory subpoena such as those used by the IRS or other agencies. Therefore, the undersigned has issued this ruling by Order rather than by Report and Recommendation. *See, e.g.*, *United States v. Michgan Dep't of Community Health*, 2011 WL 2412602 (E.D. Mich. June 9, 2011) (an opinion delivered by Magistrate Judge Brenneman granting a motion to enforce an administrative subpoena).

1

2008 or 2009.² Over the course of the investigation, approximately fourteen investigatory records subpoenas issued by the DEA requested the production of documents to one or more DEA investigators, primarily Diversion Investigator ("DI") Burkhart in the Cincinnati, Ohio office. (Doc. 1-1, PageID 6.)

On November 23, 2015, the DEA issued an Order to Show Cause ("OSC") against the Plaintiff to begin the process of revoking the Plaintiff's registration to distribute controlled substances under the Controlled Substances Act, as "inconsistent with the public interest." (Doc. 1-2, PageID 24.); *see* 21 U.S.C. § 824(a)(4). As part of the administrative revocation process, an evidentiary hearing was set to take place on May 10, 2016, before Chief Administrative Law Judge ("ALJ") John J. Mulrooney.³

On March 31, 2016, Miami-Luken filed a Request for Issuance of a Subpoena in which Miami-Luken sought the production of a large number of records from the DEA prior to the hearing. (Doc. 1-3.) Miami-Luken asserted that it required the records in order to adequately defend itself at the hearing. (*Id.*) The DEA objected to the production of any records pursuant to the subpoena. In an April 12 omnibus order denying Miami-Luken's request, the ALJ found the subpoena "simply too broad," with portions amounting to an impermissible "fishing expedition." (Doc. 1-4, PageID 75). Nevertheless, the ALJ indicated a willingness to issue a more narrowly tailored

---

²The DEA generally alleges that Miami-Luken illegally distributed hundreds of thousands, if not millions, of dosage units of oxycodone and hydrocodone in the Appalachian region of Ohio, Kentucky, and West Virginia, and that it will continue to do so until such time as its registration is revoked. (Doc. 11, PageID 209, citation omitted.)
³Judge Mulrooney is the first author of *Drug Diversion Administrative Revocation and Application Hearings for Medical and Pharmacy Practitioners: A Primer for Navigating Murky, Drug-infested Waters*, 78 Alb. L. Rev. 327 (2015). According to the biographical note in that article, he currently presides as the Department of Justice, DEA Chief ALJ, but has had a long career in public service. That career includes prior practice as an Assistant U.S. Attorney, a Department of Justice/INS trial attorney, an assistant district attorney, a Navy judge advocate, and a judicial law clerk, as well as serving as a judge on the Navy-Marine Corps Court of Criminal Appeals and as an administrative law judge at the Social Security Administration. *Id.* at n. a1.

subpoena, and the denial was without prejudice to Miami-Luken to resubmit an amended request by April 18, 2016. (*Id.*, PageID 77, n. 24).

On April 18, 2016, Miami-Luken timely submitted a Supplemental Request for Issuance of a Subpoena along with a revised draft subpoena, requesting the following:

(1) Records regarding personnel and employment information for all Government witnesses that relate to: prior or pending disciplinary actions relating to the employee's investigation of Miami-Luken, Inc.; work history and/or complaints against Government witnesses related to unfairly targeting particular DEA registrants; all records relating to complaints, investigations, and/or referrals to the Office of Professional Responsibility regarding prior inconsistent statements made by the witness; evidence in the form of opinion or reputation as to the witnesses' character for truthfulness; information to suggest that the witness is biased against Miami-Luken and any other information contained in the witnesses' Giglio file maintained pursuant to USAM 9-5.001;

(2) All records, including investigative reports, regarding routine audits and/or cyclic investigations conducted by the Government towards Respondent from 2008 – present, along with Government comments, communications (both oral and written), and all notifications of any kind directed at Respondent, its agents, employees, and representatives in relation to such reports, audits, and investigations.

(3) All records regarding briefings provided by DEA Headquarters and/or DEA local office-personnel as part of the DEA's Distributor Initiative; and

(4) All records, including investigative reports, from 2008-present, documenting that Respondent violated the applicable controlled substances laws and regulations, including but not limited to documents related to suspicious orders and all records, including investigative reports, to evidence that the Respondent's conduct created the potential for the diversion of controlled substances.

(Doc. 1-5, PageID 88.)  Miami-Luken directed the subpoena to DI Burkhart, the same DEA agent to whom Miami-Luken had been directed to deliver thousands of documents over the years, in response to the DEA's prior investigatory subpoenas. (*Id.*, PageID 87.)

Two hours later on the same day, without awaiting any additional response from the DEA, the ALJ granted Miami-Luken's amended request.  The ALJ directed the DEA to comply with all but section one of the revised adjudicatory subpoena by May 2, 2016.

3

(Doc. 1-6, PageID 90.) On May 3, the DEA filed a motion for reconsideration or, in the alternative, for leave to file an interlocutory appeal of the ALJ's order to the DEA Administrator. (Doc. 1-8.) In part, the DEA argued that the ALJ did not have the authority to compel the DEA to release investigative reports to a third party, and that to comply with the subpoena would cause the DEA "irreparable harm." (*Id.*, PageID 108.)

On May 4, the ALJ denied the DEA's motion, refusing either to reconsider the issuance of the subpoena or to grant leave to the DEA to file an interlocutory appeal. (Doc. 1-9.) Instead, the ALJ insisted that "the Government may seek to 'contest' the subpoena, but that contest and its arguments in support are properly made only before a 'court of the United States.'" (*Id.*, PageID 122.) The Office of Chief Counsel for the DEA filed a "Government Notice" on the same day, which "respectfully decline[d] to comply" with the ALJ's order. (Doc. 1-10, PageID 125.)

In response to the DEA's refusal to comply with the subpoena, Miami-Luken requested a stay of the scheduled hearing. (Doc. 1-11). The DEA filed a response in opposition to the stay on May 5, but the ALJ granted the requested stay the same afternoon. The ALJ indicated that the stay would remain in place until May 31, 2016, or until a court had resolved the issue regarding the disputed subpoena, "whichever comes first." (Doc. 1-12, PageID 140.) To date, that stay has twice been extended. Currently, the underlying administrative proceedings have been stayed by ALJ Mulrooney until July 28, 2016, on which date a status conference has been scheduled. (Doc. 14-1, PageID 404.)

On May 18, 2016, Miami-Luken filed an "emergency motion" in this Court, seeking an order to enforce the subpoena previously issued by the ALJ. On June 16,

4

the DEA filed a response, (Doc. 11), to which Plaintiff filed a reply on June 27. (Doc. 13).

## II. Threshold Issues

Two threshold issues first must be considered: 1) whether this Court has jurisdiction and 2) whether the matter is ripe for judicial review. For the reasons explained below, this Court answers both questions in the affirmative.

### A. District Court Jurisdiction to Enforce Administrative Subpoenas

The authority of an ALJ at administrative hearings held under the Controlled Substances Act ("CSA") is governed broadly by the Administrative Procedures Act ("APA"). See 5 U.S.C. § 556(c); *see also* 21 U.S.C. § 875. Both parties discuss at length whether this Court has jurisdiction over an administrative subpoena enforcement action under the APA and/or the CSA. The undersigned finds ample basis for jurisdiction in this Court.

Pursuant to the APA, two types of agency actions are subject to court review: 1) "[a]gency action made reviewable by statute" and 2) "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704; *Air Brake Systems, Inc. v. Mineta*, 357 F.3d 632, 638 (6th Cir. 2004). Although both parties to this action focus their attention on the second provision, arguing vigorously about whether the DEA's refusal to comply with the ALJ's subpoena constitutes "final agency action," the undersigned concludes that the administrative subpoena at issue is fully reviewable as an "agency action made reviewable by statute." Because this Court's jurisdiction lies under a provision of the APA separate from 5 U.S.C. § 704, in combination with the authority granted to the ALJ under the CSA, it is unnecessary to determine whether this Court has additional

jurisdiction to review the DEA's refusal to comply with the subpoena as a <u>final</u> agency action.

As stated, the disputed subpoena was issued by the ALJ under the express authority of the Controlled Substances Act, pursuant to a revocation proceeding initiated by the DEA. Upon completion of a lengthy investigation involving multiple investigatory subpoenas, the DEA issued an OSC, providing Miami-Luken with a statement of the legal and factual bases for the proposed revocation of its controlled substances registration. *See* 21 U.S.C. § 824(c); 21 C.F.R. § 1301.37(c). In accord with the next step in the agency's administrative revocation process, an evidentiary hearing was set before the ALJ. *See* 21 C.F.R. § 1301.44(e).

Prior to the evidentiary hearing originally scheduled for May 10, 2016, each party was required to identify witnesses and submit "all documentary evidence and affidavits to be marked for identification." 21 C.F.R. § 1316.54(d) and (e). Unlike a civil suit in this Court, there is "no general right to discovery…,but rather only a limited right to receive in advance of the hearing the documentary evidence and summaries of the testimony which the Government intends to rely upon." *Roy E. Berkowitz*, 74 Fed. Reg. 36,758, 36,760 (DEA July 24, 2009).

As stated, the ALJ's authority to hold the hearing (and to issue the subpoena in advance of the hearing) arises from the CSA, which provides that the Attorney General "may hold hearings, <u>sign and issue subpenas</u>,[4] administer oaths, examine witnesses, and receive evidence at any place in the United States." 21 U.S.C. § 875(a)(emphasis added). The Attorney General has delegated this statutory authority to DEA ALJs, including ALJ Mulrooney, so that they may issue subpoenas to compel the attendance

---

[4]The statute uses the unusual spelling (or perhaps misspelling) of "subpena" rather than "subpoena."

6

of witnesses and the production of materials "necessary to conduct administrative proceedings pending before [them]."  21 C.F.R. § 1316.52(d); (*see also* Doc. 11. PageID 208, DEA's discussion of delegation of adjudicatory subpoena power to DEA ALJs under the statutory authority of the CSA.)

The APA similarly authorizes all officials who preside over agency adjudications to "issue subpoenas authorized by law."  5 U.S.C. § 556(c)(2).  Both parties agree that any party (including Miami-Luken, as the party subject to the OSC), may request the issuance of a subpoena from a presiding ALJ, based upon "a showing of general relevance and reasonable scope of the evidence sought."  5 U.S.C. § 555(d).  In other words, if a party can convince an ALJ that a subpoena is "necessary" for the ALJ to adjudicate a proceeding, then the ALJ should order the subpoena to issue.

The undersigned concludes that the ALJ's order, issuing the subpoena in the underlying proceeding, constitutes "agency action reviewable by statute."  Judicial review of the subpoena is provided for in the CSA through explicit referral to Chapter 5 of the APA.  Although the U.S. Supreme Court has made clear that neither 5 U.S.C. § 704 nor any other portion of Section 10 of the APA "afford[s] an *implied* grant of subject matter jurisdiction permitting federal judicial review of agency action," *Califano v. Sanders*, 430 U.S. 99, 107 (1977) (emphasis added), Chapter 5 of the APA provides both for the issuance of administrative subpoenas, and for judicial review of contested administrative subpoenas.  *See* 5 U.S.C. § 555(d).

Consistent with the same authority provided under the CSA, the referenced APA provision generally sets forth that agency subpoenas are to be issued "on request and, when required…, on a statement or showing of general relevance and reasonable scope…."  5 U.S.C. § 555(d).  Central to this Court's exercise of jurisdiction, the statute

further states: "On contest, the court shall sustain the subpena or similar process or demand to the extent that it is found to be in accordance with law. In a proceeding for enforcement, the court shall issue an order requiring the appearance of the witness or the production of the evidence or data." *Id.*

Both parties cite to this statutory provision. (*See, e.g.,* Plaintiff's Memo, Doc. 1-1, PageID 16; Defendant's Memo, Doc. 11, PageID 208). The undersigned finds ample case law to support the premise that the explicit provision for judicial review of administrative subpoenas provided in 5 U.S.C. §555(d) falls within the more general APA provision for court review of "agency action made reviewable by statute." The contested administrative subpoena was issued pursuant to the express statutory authority delegated to the ALJ under the authority of the CSA in 21 U.S.C. § 875(a), and is made reviewable by this Court under the express language of the APA itself.

The Sixth Circuit and other courts within this circuit have long relied upon this same provision when reviewing the enforceability of administrative subpoenas in other contexts. The Sixth Circuit also has confirmed that initial review of the enforceability of administrative subpoenas generally lies in the district court. *See e.g., Doe v. United States*, 253 F.3d 256 (6th Cir. 2001) (explaining jurisdictional basis and standards applicable to judicial review). It is true that the DEA's authority to issue an adjudicatory subpoena and its authority to issue an investigatory subpoena under the CSA rely on different statutory provisions. In truth, the statutory provision authorizing the issuance of investigatory subpoenas is far more detailed than the provision that governs the issuance of adjudicatory subpoenas. *Compare* 21 U.S.C. § 875(a) (power to issue adjudicatory subpoena) with 21 U.S.C. § 876(a) and (b) (power to issue investigatory subpoena). With respect to investigatory subpoenas, Congress has expressly spelled

out the authority of the Attorney General to "invoke the aid of any court" in enforcement proceedings. *See* 21 U.S.C. § 876(c).  Unsurprisingly, the overwhelming majority of court cases involving the enforcement of administrative subpoenas, whether filed by the DEA under the CSA, or by any other agency governed by the broader provisions of the APA, involve investigatory subpoenas.

In contrast to the more detailed provision providing for judicial review of investigatory subpoenas issued by the DEA under § 876(c), 21 U.S.C. §875(b) makes clear that "[e]xcept as otherwise provided in this subchapter, …hearings shall be conducted under appropriate procedures of subchapter II of chapter 5 of Title 5."  In short, 21 U.S.C. § 875(b) makes abundantly clear that judicial review of subpoenas issued under § 875(a) is through Chapter 5 of the APA.  Notwithstanding the fact that most litigated cases concern the enforcement of administrative subpoenas issued under an agency's investigatory authority, the APA provision providing for court review of administrative subpoenas makes no distinction between investigatory subpoenas and adjudicatory subpoenas.  Therefore, jurisdiction exists under both 21 U.S.C. § 875(b) and 5 U.S.C. § 555(d).

Relying on broad language that the APA does "not limit or repeal additional requirements imposed by statute," *see* 5 U.S.C. § 559, the DEA argues that under the CSA, judicial review of DEA actions is permitted <u>only</u> for "final determinations, findings and conclusions."  21 U.S.C. § 877.  Similarly, the DEA argues that the APA itself permits review only of "final agency action," by preventing challenges to "preliminary, procedural, or intermediate agency action" before the agency has issued a final determination.  5 U.S.C. § 704.  Under the DEA's construction, a court could never review any administrative subpoenas issued by the DEA (including, at least arguably,

9

the enforcement of investigatory subpoenas),[5] or any other action connected with a revocation proceeding until long after the ALJ issues his or her findings, because the DEA contends there is no "final" agency action until such time as the DEA Administrator acts on the ALJ's preliminary decision and makes a final revocation determination. Further, according to the DEA, any decision on the subpoena cannot be considered "final" unless and until the ALJ's decision on the subpoena has undergone further review by the Administrator. Ordinarily, no review of an ALJ's subpoena (or any other procedural issue) would occur prior to review of the ALJ's revocation decision after the underlying hearing has concluded, unless an interlocutory appeal of the subpoena has been expressly authorized by the ALJ.[6] Alternatively, the DEA posits that if any federal court jurisdiction over the enforcement of the administrative subpoena exists, jurisdiction would lie in the Sixth Circuit Court of Appeals and not this Court, since the appellate courts have exclusive jurisdiction of final registration revocation determinations. 21 U.S.C. § 877.

This Court can agree with only a portion of the DEA's argument: that judicial review of any final registration revocation by the DEA Administrator is confined to the federal appellate courts. *See* 21 U.S.C. § 877. Otherwise, the undersigned finds the DEA's position to be untenable, and a significant misreading of the statutory framework of both the CSA and APA. The referenced statutory provision of the Controlled Substances Act does not override all other provisions of that Act, including 21 U.S.C. § 875(b), which incorporates the APA provisions for the enforcement of all administrative

---

[5]Although the CSA specifically provides for judicial enforcement of an investigatory subpoena issued by the DEA in 21 U.S.C. § 876(c), the referenced provision does not specify the timing of judicial enforcement.

[6]The DEA admits that "generally, the DEA Administrator will not review any ALJ decision before the close of the hearing." (Doc. 11 at 4). In this case, the ALJ denied the DEA's request to certify his subpoena order for an interlocutory appeal to the Administrator.

subpoenas. Since the same statute applies to both investigatory and adjudicatory subpoenas, this Court has jurisdiction over Miami-Luken's enforcement action.

### B. Prudential Ripeness for Judicial Review

As a second threshold issue, the DEA argues that Miami-Luken's motion should be denied based upon the "prudential ripeness doctrine." *See generally Abbott Labs. v. Gardner*, 387 U.S. 136, 148-149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). As the DEA concedes, the continued vitality of that doctrine is open to debate, following the Supreme Court's decision in *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014); *see also Kiser v. Reitz*, 765 F.3d 601, 606-07 (6th Cir. 2014). However, there is no need to weigh in on that debate. To the extent the doctrine retains any applicability, it does not favor this Court's abstention from review of the instant dispute.

For the reasons discussed above, both the CSA and the APA favor the exercise of jurisdiction by this Court to rule on the enforceability of the ALJ's adjudicatory subpoena. Although the DEA urges this Court to forego any review until after the conclusion of the underlying evidentiary hearing, that course of action would frustrate the entire purpose of the subpoena — which the ALJ issued as "necessary" to conduct the same hearing. The ALJ already has stayed the evidentiary hearing until this Court completes its review of the contested subpoena. And the parties have fully briefed the underlying issues regarding whether the subpoena should be enforced. In other words, interference with administrative proceedings is more likely to result if this Court foregoes the judicial review process provided by statute, than if it engages in such review.

As the ALJ put it in explaining his decision not to certify an extraordinary interlocutory appeal of his order to the Administrator, but instead to require the parties to proceed to judicial review:

> There is…no DEA agency decision that would in any way support the incessant forwarding of routine hearing decisions such as the issuing of subpoenas to the head of the Agency as a matter of course for no greater reason than the Government disagrees with them. The next logical step could be that the Government could seek appeal [to the Administrator] for every hearsay or other evidentiary objection that is not to the Government's liking. Federal agency heads would need to virtually stand at the [ALJ's] courtroom door to ensure that the Government is afforded an instantaneous endorsement or reversal of every adverse ruling during the course of the [administrative] proceedings.

(Doc. 1-13, PageID 138, n.1).

### III. Enforceability of the Administrative Subpoena

Having determined both that this Court has jurisdiction to review the enforceability of the contested subpoena, and that it should not abstain from exercising that jurisdiction, the Court turns to the merits of the underlying dispute over the breadth and scope of the subpoena.

The Sixth Circuit has acknowledged that the role of the district court in enforcement proceedings is limited. *United States v. Markwood*, 48 F.3d 969, 976 (6th Cir. 1995). In this case, the APA advises that the court should enforce an agency subpoena "to the extent that it is found to be in accordance with law." 5 U.S.C § 555(d). In general, the court gives deference to agency subpoenas, and "request for documents should be approved by the judiciary so long as it 'is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.'" *Doe v. United States*, 253 F.3d 256, 263 (6th Cir. 2001) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950)). Thus, in this enforcement proceeding there are

12

only two considerations before the Court, 1) whether the subpoena issued is authorized by statute and 2) whether the demand is definite and reasonable.

### A. Statutory Basis for Subpoena Power

As previously discussed, Congress granted the Attorney General subpoena power. *See* 21 U.S.C. § 875(a). In turn, the Attorney General has delegated this statutory authority to issue subpoenas to ALJs "to the extent necessary to conduct administrative hearings pending before [them]." 21 C.F.R. § 1316.52(d). The DEA makes much of the word "necessary," arguing that Miami-Luken cannot show that the documents requested are necessary because the "DEA cannot use any new documents at the hearing, at least without first providing them to Miami-Luken." (Doc. 11, PageID 219) (citing 21 C.F.R. § 1316.57). DEA also posits that if the requested documents are not necessary, the subpoena is not "'in accordance with law' and cannot be judicially enforced." (*Id.* (quoting 5 U.S.C. § 555(d).)

According to the CSA, the purpose of the ALJ's subpoena power is "to conduct a fair hearing, to take all necessary action to avoid delay, and to maintain order." 21 C.F.R § 1316.52. In its objections to the subpoena, DEA asserts that Miami-Luken should only be allowed access to the documents the DEA plans to produce as exhibits in the hearing. (*See* Doc. 11, PageID 219.) If that were the case, the ALJ's subpoena power would be rendered impotent. The DEA admits that private parties have access to the subpoena power of the ALJ. (Doc. 11, PageID 207, "either the agency as regulator or the regulated entity…may request that the ALJ issue a subpoena.") However, as ALJ Mulrooney noted, "[i]f a federal agency was empowered to capriciously limit the Administrative Law Judge's subpoena authority…it would hardly be 'mak[ing] agency subpoenas available to private parties to the same extent as agency representatives.'"

13

(Doc 1-9, PageID 120, quoting *U.S. Dep't of Justice Attorney General's Manual on the Administrative Procedure Act* § 6(c), at 67.) Instead, the agency would only have to release documents that it found "necessary" for the hearing, and the ALJ would have no subpoena power to require otherwise. The undersigned rejects this theory and finds that the plain meaning of the statute gives the ALJ discretionary authority to determine what he needs to conduct a fair, expeditious, and orderly hearing, and therefore allows the ALJ to issue subpoenas to that end.

### B. Definiteness and Reasonableness of the Request

As the undersigned finds that the ALJ had the requisite statutory authority to issue the subpoena, she must now consider whether Miami-Luken's subpoena request was definite and reasonable. The ALJ issued a subpoena that adopted Category (2)-(4) of Miami-Luken's drafted subpoena request. In order to determine whether the subpoena is enforceable, the undersigned must consider each part of the subpoena separately. Then, the undersigned will "'weigh the likely relevance of the requested material to the investigation against the burden...of producing the material.'" *Doe v. United States*, 253 F.3d at 267 (quoting *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994.)

Category (2) of the contested subpoena seeks documents that relate to routine audits or cyclic investigations of Miami-Luken that the DEA has conducted since 2008, including "Government comments, communications (both oral and written), and all notifications of any kind directed at Respondent, its agents, employees, and representatives in relation to such reports, audits, and investigations." (Doc. 1-5, PageID 88; Doc. 1-6, PageID 91.) Miami-Luken explains that it seeks the information in order to "reveal whether Miami-Luken was in compliance or violation of applicable DEA

14

regulations" throughout the relevant time period. (Doc. 1-5, PageID 82.) Miami-Luken also asserts that this request is both definite and reasonable because it "focuses narrowly on" and is "directly relevant to the DEA's allegation." (Doc. 1-1, PageID 19.)

Category (3) seeks "all records regarding briefings provided by DEA Headquarters and/or DEA local office-personnel as part of the DEA's Distributor Initiative," on grounds that the information "may reveal the basis of or updates to the DEA's treatment of compliance requirements under the applicable regulations over the relevant time period," and "may reveal any consistencies or inconsistencies regarding DEA instructions to different registrants and/or the DEA's definition of adequate compliance between DEA Headquarters and local office personnel."  (Doc. 1-5, PageID 84.)

Category (4) seeks "[a]ll records, including investigative reports, from 2008-present, documenting that Respondent violated the applicable controlled substances laws and regulations…to evidence that Respondent's conduct created the potential for the diversion of controlled substances."  (Doc. 1-5, PageID 88; Doc. 1-6, PageID 91.) Miami-Luken asserts that this request "goes to the heart" of the DEA's case and "seeks the very documentation that purportedly prompted the DEA to allege such violations." (Doc. 1-1, PageID 21.) Miami-Luken further contends that these records "are integral for Miami-Luken to corroborate or disprove the allegations in the OSC." (*Id.*)

The DEA rejects the subpoena as a whole and maintains that it would "require several weeks, if not months, to search for, review, and produce responsive documents."  However, the DEA's primary objection is that the subpoena contravenes "decades of practice and precedent regarding the scope of disclosures that are required or appropriate in DEA administrative proceedings."  (Doc. 11, PageID 211.) In support

15

of this contention, the DEA supplied affidavits from a Deputy Assistant Administrator and an Assistant Administrator and Chief of Operations of the DEA. (Docs. 11-1, 11-2.) There was no case law precedent cited.

In his affidavit, Louis Milione states that "[f]or the purposes of an administrative hearing, the parties to the adjudication may request adjudicatory subpoenas from the presiding ALJ. The ALJ must grant a request for a subpoena for information that is necessary for the hearing." (Doc. 11-1, PageID 226 at ¶ 9.) In Milione's opinion, this means that the ALJ should grant a subpoena request if it "compels either a witness to testify at the hearing or the production of evidence for use as an exhibit." The DEA, resting solely on Milione's opinion, claims that this is the only circumstance under which the ALJ can issue a subpoena. (Doc. 11, PageID 219.) The DEA believes that Miami-Luken's request is a "classic fishing expedition" and not a legitimate request for relevant evidence. (*Id.*)

The other DEA affiant, Anthony Williams, expressed concern about "any expansion to the subpoena authority permitted in suspension or revocation proceedings." (Doc. 11-2, PageID 230 at ¶ 8.) Williams primarily worries that the efficiency and efficacy of the revocation process might be compromised if this Court enforces "document subpoenas akin to civil discovery." (*Id.*) Williams suggests that "[t]here is minimal utility from such an enhanced burden because DEA already provides a registrant all of the documents DEA will use as evidence against the respondent in advance of the hearing." (*Id.* at ¶ 9.) Further, he states that "if the administrative process were prolonged to account for discovery, it would be less attractive to law enforcement personnel." (*Id.*, PageID 231 at ¶ 10.) He also contends that expansive subpoena requests would be burdensome to the agency, and "would detract from the amount of

16

time that senior agency leadership has to perform a range of other responsibilities in connection of with DEA's misson." (*Id.*, PageID 232 at ¶ 12.) This Williams says "would significantly compromise DEA's efforts to combat diversion and ultimately pose an enhanced public health and safety risk." (*Id.*, at ¶ 13.)

While these policy considerations are not lost on the undersigned, the DEA does not illuminate how any of them speak to either the definiteness or reasonableness of the specific request made by Miami-Luken in this case. The DEA makes clear that discovery is not allowed and that exculpatory evidence need not be disclosed throughout the evidentiary hearing process, but does not provide a sufficiently compelling justification for denying Miami-Luken's subpoena request in whole. For that reason, the undersigned finds that the subpoena request should be enforced with modification.

The undersigned finds that the subpoena as written creates an undue burden on the DEA to produce documents that are likely to be irrelevant to the evidentiary hearing. If the subpoena is enforced as written, the DEA would have to expend needless time and resources to comply, with little benefit to Miami-Luken.

First, Miami-Luken's Category (2) request for "Government comments, communications (both oral and written), and all notifications of any kind directed at Respondent, its agents, employees, and representatives" in relation to its Category (2) request is unreasonable. The request for comments and communication is overbroad and burdensome, and likely protected by a privilege. Furthermore, the Respondent should already have access to most of this information because, by definition, it was directed at them. Miami-Luken provides no justification for shifting the burden of compiling this evidence to the DEA, given the fact that Miami-Luken could just as easily

17

look at its own records to find the same information. Thus, this part of the request is stricken.

Additionally, the DEA strongly objects to providing Miami-Luken with the investigative reports requested in Category (2) and (4). The undersigned finds that those documents are reasonably relevant to the hearing. However, recognizing that there may be sensitive information in the investigative reports not relevant to the findings as they relate to Miami-Luken,—for example, investigatory techniques—the undersigned will allow for the DEA to provide Miami-Luken with reasonably redacted versions. All remaining language in Category (2) shall be left intact.

Miami-Luken's Category (3) request is premised on a tenuous theory that the DEA may have inconsistencies in its instructions to different registrants. (*See* Doc. 1-1, PageID 20-21.) The request is general and very broad and would likely require the DEA to produce hundreds of documents that are not relevant to the issue before the ALJ, which is limited to Miami-Luken. Miami-Luken has not established why it believes that the DEA has been inconsistent, so there is no reason for the undersigned to find that the documents requested are relevant enough to justify the burden of producing them. Thus, this request shall be stricken in its entirety.

Finally, the Court finds Category (4) to be reasonable as limited above regarding investigative reports.

### IV. Conclusion and Order

For the reasons stated herein, IT IS ORDERED that the DEA abide by the subpoena as limited by this Order. Such response shall be produced within 21 days of this Order.

IT IS SO ORDERED.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge