UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MIAMI-LUKEN, INC.,

          Plaintiff,

    v.

UNITED STATES
DEPARTMENT OF JUSTICE,
DRUG ENFORCEMENT ADMINISTRATION

          Defendant.

Case No. 1:16-mc-012

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Pursuant to custom and practice, this miscellaneous action was referred to the undersigned magistrate judge. Currently pending is the DEA's Rule 60(b)(5) motion to set aside the prior decision of this Court. I now recommend that the DEA's motion be DENIED.

**I.    Background**

The underlying action was initiated in this Court on May 18, 2016, when Plaintiff Miami-Luken, Inc. ("Miami-Luken") filed an "emergency motion" seeking to compel the Drug Enforcement Administration ("DEA") to comply with an administrative subpoena[1] issued by Chief Administrative Law Judge ("CALJ") John J. Mulrooney.[2]  However, the administrative proceedings that led to this federal litigation began much earlier.

---

[1]Virtually all administrative subpoena disputes that percolate up to the federal court level involve investigatory subpoenas, not adjudicatory subpoenas like the one at issue in this case. The differences between the two types were discussed in the prior Order of this Court. Thus, at the outset, the undersigned acknowledges (as do the parties) that there is little if any case law precisely on point. (See Doc. 23 at 11).

[2]Judge Mulrooney is the first author of *Drug Diversion Administrative Revocation and Application Hearings for Medical and Pharmacy Practitioners: A Primer for Navigating Murky, Drug-infested Waters*, 78 Alb. L. Rev. 327 (2015). He currently presides as the DEA CALJ, but his public service career includes prior practice as an Assistant U.S. Attorney, a Department of Justice/INS trial attorney, an assistant district attorney, a Navy judge advocate, and a judicial law clerk, as well as service as a judge

Plaintiff Miami-Luken is a Dayton Ohio pharmaceutical wholesaler with a DEA registration that permits it to operate its business.  For nearly a decade,[3] Plaintiff has been under DEA scrutiny for "facilitat[ing] the diversion of significant quantities of the highly addictive pain killers, oxycodone and hydrocodone."  (Doc. 11 at 2.)  The Court takes judicial notice of the fact that the referenced prescription drugs are among a class of opioids that have been commonly recognized as contributing to an ongoing opioid crisis in the United States.  Over the course of its investigation, the DEA has issued numerous investigatory subpoenas to Miami-Luken, requiring the production of documents to DEA investigators, primarily in the Cincinnati, Ohio office.

The DEA conducts administrative, civil, and criminal proceedings.  Among the administrative tools that the DEA has employed to combat the opioid crisis are immediate suspension orders and revocation orders. Although an immediate suspension order may be entered without a hearing, revocation orders involve a different administrative process.  *Compare* 21 U.S.C. § 824(c) and (d).  On November 23, 2015, the DEA issued an Order to Show Cause ("OSC") against the Plaintiff to begin the process of revoking the Plaintiff's registration to distribute controlled substances under a provision of the Controlled Substances Act, as "inconsistent with the public interest."  (Doc. 1-2.); *see* 21 U.S.C. § 824(a)(4).  As part of the revocation process, an evidentiary hearing (at which the DEA bears the burden of proof) was scheduled by CALJ Mulrooney to take place on May 10, 2016. *See* 21 C.F.R. §1301.44(e).

---

on the Navy-Marine Corps Court of Criminal Appeals and as an administrative law judge at the Social Security Administration. *Id.* at n.a1.

[3] Although precise dates are not clear from the record of this Court, the investigation appears to have begun in 2007 or 2008.  The DEA generally alleges that Miami-Luken illegally distributed hundreds of thousands, if not millions, of dosage units of oxycodone and hydrocodone in the Appalachian region of Ohio, Kentucky, and West Virginia, and that it will continue to do so until such time as its registration is revoked.  (Doc. 11 at 9, additional citation omitted).

Prior to that revocation hearing, Miami-Luken filed a Request for Issuance of a Subpoena (Doc. 1-3) that sought a large number of DEA records that Plaintiff asserted were necessary to adequately defend itself. An ALJ has the power to receive evidence and to issue subpoenas to compel the attendance of witnesses and the production of materials "necessary" for the hearing. *See* 21 C.F.R. §1316.52(d). However, administrative revocation hearings do not include the type of discovery process that is available to civil litigants in this Court. Citing that principle, the DEA objected to the issuance of an adjudicatory subpoena that would require the DEA to produce any records, other than those that the DEA itself planned to use at the hearing. In an April 12 omnibus order denying Miami-Luken's request, CALJ Mulrooney agreed that the subpoena was "simply too broad," with portions amounting to an impermissible "fishing expedition" (Doc. 1-4 at 14). Nevertheless, the CALJ denied the request without prejudice to Miami-Luken to amend its request by April 18, 2016. (Doc. 1-4 at 16, n.24).

On April 18, 2016, Miami-Luken timely submitted a Supplemental Request for Issuance of a Subpoena, requesting four specific categories of documents. (Doc. 1-5). The same day, without awaiting any additional response from the DEA, the CALJ granted the amended request and issued the subpoena, directing DEA to produce three of the four categories of documents prior to the administrative hearing. (Doc. 1-6). On May 3, the DEA filed a motion for reconsideration or, in the alternative, for leave to file an interlocutory appeal to the DEA Administrator. (Doc. 1-8). In part, the DEA argued that to comply with the subpoena would cause the DEA "irreparable harm." (*Id.*)

On May 4, the CALJ denied the DEA's motion, refusing either to reconsider the issuance of the subpoena or to allow an interlocutory appeal. (Doc. 1-9). Instead, the CALJ held that to the extent that the DEA wished to further contest the subpoena,

3

further arguments "are properly made only before a 'court of the United States.'" (*Id.* at 7). The Office of Chief Counsel for the DEA filed a "Government Notice" in response to the CALJ's May 4 order on the same day, which "respectfully decline[d] to comply" with the subpoena. (Doc. 1-10).

In response to the DEA's refusal to comply with the subpoena issued by CALJ Mulrooney, Miami-Luken requested a stay of the scheduled hearing, and the CALJ granted that request. (Doc. 1-11). To date, the stay of the revocation proceeding at the administrative level remains in effect, pending the outcome of this federal litigation.

As stated, after the DEA refused to comply with the subpoena, Miami-Luken filed an "emergency motion" in this Court seeking to enforce the subpoena as necessary to the hearing in part on due process grounds. The DEA vigorously defended its refusal to comply with the subpoena, arguing that its issuance contravenes "decades of practice and precedent regarding the scope of disclosures that are required or appropriate in DEA administrative proceedings." (Doc. 11 at 10). On July 15, 2016, the undersigned filed a Memorandum Order that granted in part Plaintiff's motion to enforce the administrative subpoena. The undersigned directed the DEA to comply with the subpoena within 21 days, but narrowed its scope. (Doc. 15). Thus, the undersigned directed production of only two categories of materials out of the three categories authorized by the CALJ. The Order further stated that the DEA would be permitted to respond to the remaining two categories by disclosing "reasonably redacted" documents that protected "sensitive information in …investigative reports not relevant to the [DEA's] findings as they relate to Miami-Luken – for example, investigatory techniques." (Doc. 15 at 18).

On July 29, 2016, U.S. District Judge Dlott granted the DEA's unopposed motion to stay the Order pending the Court's ruling on Objections.  Following full briefing by the parties, Judge Dlott granted the DEA's request for oral argument on its Objections, setting a hearing for February 17, 2017. (Doc. 23).   On April 21, 2017, after considering "de novo all the filings in this matter," Judge Dlott overruled the DEA's Objections and adopted the undersigned's Memorandum Order.[4] Judge Dlott's Order also terminated the case. (Doc. 24).

The entry of the April 21, 2017 Order enforcing the subpoena reinstated the 21 day clock for the DEA to comply with that subpoena, as modified by this Court.  However, on the last date for compliance, the DEA filed an "Emergency Motion to Stay" dismissal of this case and to excuse any further compliance with the Court's Order.  The DEA's motion stated that the DEA Acting Administrator had issued a May 12, 2017 Order that quashed the subpoena issued by CALJ Mulrooney.  Because this Court's Order directs the DEA to comply with a subpoena that (purportedly) has been quashed, the DEA stated its intention to move for relief from this Court's judgment.  On May 16, 2017, Judge Dlott granted the DEA's motion for a temporary emergency stay "pending the later of (i) the resolution of the DEA's forthcoming motion for relief from judgment or (ii) any appeal of the Court's judgment has been resolved."  (Doc. 26).

The DEA did not appeal this Court's final order of enforcement of the subpoena to the Sixth Circuit, but instead, filed a motion seeking relief from this Court under Rule 60(b)(5) of the Federal Rules of Civil Procedure.  Miami-Luken has filed a response, to

---

[4]The Memorandum Order filed by the undersigned on July 15, 2016 determined that the enforcement of an administrative subpoena was a non-dispositive matter that did not require a Report and Recommendation.  In adopting the Memorandum Order over the DEA's objections, Judge Dlott appears to have concurred with that analysis.  In light of the issues of law presented and Judge Dlott's express statement that she conducted a "de novo" review of the same, however, any distinction between the original filing of an Order or R&R was rendered moot.  An R&R is filed to address the DEA's current motion, because 28 U.S.C. § 636(b)  authorizes disposition by order only of pretrial matters.  A Rule 60(b)(5) motion is not a "pretrial matter."

which the DEA has filed a reply. On June 14, 2017, Judge Dlott referred the Rule 60(b)(5) motion to the undersigned.

On June 15, 2017, the parties filed a Joint Notice of Related Case, attesting to the fact that Miami-Luken independently has appealed the DEA Administrator's May 12, 2017 Order to the Sixth Circuit Court of Appeals. *See Miami-Luken, Inc. v. DEA*, Case No. 17-3614 (6th Circuit). The pendency of that appeal impacts this case, but does not stay proceedings in this Court.

## II.    Analysis

The issues presented form a procedural maze (or perhaps quagmire), with sufficient interplay between the Administrative Procedures Act and the Controlled Substances Act, that proverbial rabbit holes abound at every twist and turn. However, keeping the Court's focus on the standards of Rule 60(b)(5), and for the reasons that follow, the undersigned recommends the denial of Defendant's motion for relief of judgment, without prejudice to renew such motion following disposition of the related appeal in the Sixth Circuit Court of Appeals.

Rule 60(b), Fed. R. Civ. P., provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding" based on a list of specified reasons. Rule 60(b)(5), the provision under which the DEA proceeds, offers relief if "the judgment has been satisfied, released or discharged, it is based on an earlier judgment that has been reversed or vacated, or applying it prospectively is no longer equitable." The DEA readily admits it has not complied with this Court's April 21, 2017 Order directing it to immediately comply with the adjudicatory subpoena, with a corresponding production of materials to Miami-

Luken. However, the DEA argues that the Order requiring the DEA to comply with the administrative subpoena "is no longer equitable." (Doc. 27).

The DEA represents that "[i]n the course of reviewing DEA's compliance obligations under the April 21 Order, specifically with respect to the assertion of privileges, the DEA Administrator had his first occasion to review the underlying administrative subpoena,…" (Doc. 27 at 3). The DEA maintains that the Administrator "had not previously reviewed the issuance of the administrative subpoena because the CALJ had denied a request for interlocutory appeal on that issue." (*Id.*) The DEA goes on to reason that because the CALJ issued the subpoena under power delegated to ALJs by the Administrator, the Administrator (implicitly) was permitted to review the underlying administrative subpoena when directed to comply with that subpoena by this Court. The DEA contends that once the Administrator identified "multiple errors committed by the CALJ" in his issuance of the subpoena that this Court enforced, the Administrator determined that letting the subpoena remain in effect would "adversely affect the Agency's administrative adjudication process." (Doc. 27 at 2-3, citing Doc. 25-1, May 12, 2017 DEA Administrator Order at 11).

Contrary to this Court's determination, the Administrator concluded that the CALJ exceeded the CALJ's authority in issuing the subpoena, that the documents are "neither relevant nor material," and therefore are not necessary for the CALJ to proceed with the administrative revocation hearing. The DEA Administrator quashed the subpoena that this Court previously had upheld as valid and enforceable. The DEA asserts that "changed conditions" (its own quashing of the subpoena that this Court enforced against the agency) warrant relief under Rule 60(b)(5) or alternatively under the Court's

7

"inherent powers." *See generally United States v. Swift & Co.*, 286 U.S. 106, 114 (1932).

The undersigned recognizes, as she did in her Memorandum Order of July 15, 2016, that important issues of policy loom large in this case. The issues are of first impression in the Sixth Circuit (if not nationally), and both parties stress the far-reaching impact of their dispute in the broader context of DEA's continuing efforts to curb the opioid epidemic. (*See, e.g.*, Doc. 18 at 3: "[T]he stakes are high; on the line is not merely DEA's one-time compliance with an adjudicatory subpoena, but rather the effective functionality of the administrative process for revoking and suspending the registrations of entities that illegally import, manufacture, distribute, or dispense controlled substances." and Doc. 23 at 15, noting issues are "very rare" and "of first impression"). It is entirely possible that an appellate court would view the issues differently than previously determined by this Court. However, the key here is that review of this Court's Orders is appropriate only by an appellate court. An agency that has been directed to comply with a district court's order has no authority to simply disregard it through use of a procedural end-run. The DEA's Rule 60(b)(5) motion in this case must be denied because it is based upon a fundamentally untenable procedure, whereby the DEA Administrator created its own "changed circumstance" by "quashing" an Order that already had been determined by this Court to be valid and enforceable, rather than either choosing to comply with this Court's Order or to file a further appeal.

The DEA's statement that its Administrator embarked on this unique course of action because he was unable to review the subpoena prior to this Court's order of enforcement is disingenuous. The Commissioner is the head of the DEA, and the

lawyers who represent the DEA are assumed to represent the agency not only in the agency's prosecutorial role but insofar as the DEA is led by the Commissioner.  When the DEA previously appeared before this Court, it not only had ample opportunity to present its arguments relating to the CALJ's authority (or lack thereof) to issue the subpoena, the scope of the subpoena, the relevancy of the materials, and issues of privilege, but it availed itself of that opportunity.  Indeed, the DEA argued quite forcefully that the subpoena is unenforceable because it is not "in accordance with law." (*See* Doc. 11 at 3, 10, 17-21, Gov't Notice at 1-10 (May 18, 2016)).[5]

Of course, before presenting those arguments to this Court, the DEA made the same arguments to the CALJ.  (*See generally*, Doc. 11 and Doc. 11-3, Gov't Resp. To Resp't's Req. for Issuance of a Subpoena (April 7, 2016) and Decl. of Anthony D. Williams, Doc. 1-8 (May 18, 2016)).  The Administrator's May 12, 2017 Order acknowledges that the DEA previously argued before the CALJ, in a motion to reconsider, that the CALJ exceeded his authority in issuing the subpoena, and that interlocutory appeal to the Administrator was appropriate.  (Doc. 32-1 at 7 and n.3; *see also* Doc. 11-3 at 4, arguing that the subpoena request "exceeds the hearing subpoena authority conferred both by the Administrative Procedure Act and applicable DEA regulations.").  After the CALJ rejected those arguments and Maimi-Luken initiated litigation in this Court, the DEA continued to press the same arguments.  Moreover, as the CALJ pointed out in his May 15, 2017 Order continuing the stay of the underlying administrative revocation hearing pending this Court's decision on the DEA's Rule 60(b)(5) motion, the CALJ sent the DEA Administrator a Subpoena Transmittal Request on May 26, 2016 that sought enforcement of CALJ's Order/Subpoena

---

[5]The DEA also argued that this Court lacked jurisdiction to enforce the subpoena under the Administrative Procedures Act, and/or that Miami-Luken's motion to enforce the subpoena should be denied under the prudential ripeness doctrine.

by requesting that the DEA Administrator "forward the Agency Subpoena to the Department of Justice to 'invoke the aide of [a] court of the United States… to compel compliance' 21 U.S.C. § 876(c)." …By the Subpoena Transmittal Request (filed nearly a year ago), this tribunal [the CALJ] petitioned the DEA Administrator to act, not in his prosecutorial capacity, but in his capacity as a neutral adjudicator, in seeking enforcement of the subpoena validly issued under APA…. Although this tribunal's request was neither granted nor denied, on June 3, 2016, the DEA Administrator issued a notification that he was transmitting the Subpoena Transmittal Request, not to the Department of Justice to pursue an enforcement action, but to the "Federal Programs Branch of the Civil Division of the Department of Justice, to take whatever action it deems appropriate." Admin. Transmittal Notice at 1. Thus, not only did the Administrator not seek enforcement of the subpoena issued by the tribunal [the CALJ] in the courts, but he forwarded the Subpoena Transmittal Request to the same branch of the Department of Justice that was already charged with defending against compliance with the subpoena in the District Court.

(Doc. 28-1 at n.1, emphasis added). The CALJ's May 15, 2017 Stay Order continues on at some length to describe a number of "challenging" (i.e., logically inconsistent) positions taken by the DEA Administrator to explain "why a compliance review of the District Court's Order would provide the DEA Administrator with a legal procedural opportunity to review" the "propriety and legality" of the subpoena. (*Id.* at 4, n.1).

Irrespective of the DEA Administrator's alleged inability of an opportunity to review the subpoena at the administrative level, the DEA clearly made the Administrator's position known to this Court. In its response in opposition to the original motion to compel compliance with the subpoena, the DEA attached the affidavit of Louis J. Milione, the Deputy Assistant Administrator and head of the Office of Diversion Control for the DEA, as well as the affidavit of Anthony Williams, the Assistant Administrator and COO of the DEA.[6] (Docs. 11-1, 11-2). Consistent with the Acting Administrator's May 12, 2017 Order, Assistant Administrator Williams' affidavit focused on the DEA's position that the issuance of the subpoena was contrary to regulatory

---

[6]At oral argument the DEA emphasized that the affidavit was from "the chief of DEA's worldwide operations." (Doc. 23 at 62).

authority as well contrary to the policies, custom and practice of the DEA.[7]  Although the DEA generally argued against consideration of the entire dispute under the prudential ripeness doctrine, this Court rejected that argument and proceeded to the merits of the scope of the subpoena.  In the Objections filed before U.S. District Judge Dlott, and at oral argument held on February 17, 2017, the DEA reiterated its positions that the subpoena exceeded the scope of the CALJ's authority to issue an adjudicatory subpoena, that the DEA Administrator should have been permitted to further review the subpoena, and that none of the documents referenced in the subpoena (even as modified by the Memorandum Order) were "necessary" to the hearing.  (*See generally* Docs. 18, 23).  In adopting the undersigned's Memorandum Order as the final Order of this Court, Judge Dlott rejected the DEA's challenges to judicial enforcement, including its argument that the CALJ "is not the final arbiter of the legality of the subpoena or DEA's compliance with it," but instead that the DEA Administrator "has final authority over the subpoena."  (Doc. 18 at 4).

In sum, this Court previously determined that it had jurisdiction to compel enforcement of the subpoena issued by the CALJ, and that the doctrine of prudential ripeness did not apply, rejecting further review by the Administrator.   After reviewing the legality of the CALJ's Order issuing the subpoena on the merits and the scope of that subpoena, this Court issued its final order compelling the DEA to comply.   A district court ruling that enforces an administrative subpoena is considered to be an appealable final order.  *See generally United States v. Van*, 931 F.2d 384, 386 (6th Cir. 1991); *see also McLane Company, Inc. v. EEOC*, 137 S. Ct. 1159 (2017)(holding that a district court's decision to enforce or quash an administrative subpoena should be reviewed by

---

[7]The DEA Administrator's May 12, 2017 Order "quashed" the subpoena on grounds that the CALJ's Order issuing it was an "abuse of discretion," but articulated reasons that mirrored the arguments previously presented to and rejected by this Court. (*See* Doc 25-1).

appellate courts under abuse of discretion standard).[8]  To the extent that the DEA Administrator continued to object to complying with the Court's Order, his recourse was to file an appeal with the Sixth Circuit Court of Appeals.   After this Court entered its Order, the DEA had no authority to re-determine issues previously reviewed and determined by this Court.  The only discretion expressly given to the DEA by this Court was to implement "reasonabl[e]" redactions of "sensitive information in …investigative reports not relevant to the [DEA's] findings as they relate to Miami-Luken – for example, investigatory techniques."   (Doc. 15 at 18).  Nothing in this Court's Order permitted the DEA Administrator to set aside the subpoena, as if this Court's rulings were of no effect.  Thus, the DEA Administrator's position that because he has final authority over privilege assertions, he could review the entire validity of the subpoena, is contrary to the express directives of this Court's Order.

In support of its assertion of changed circumstances that require relief under Rule 60(b)(5), the DEA relies upon cases holding that where the entity issuing the subpoena retracts the subpoena, a later court proceeding regarding the retracted subpoena becomes moot.  *See, e.g., In re Grand Jury Proceedings*, 574 F.2d 445, 446 (8th Cir. 1989), *Hulec v. J.H. Bennet & Co.*, 2014 WL 2918542 at *1 (N.D. Ohio June 26, 2014).  However, the referenced cases involve situations in which a motion to quash a subpoena is rendered moot by the opposing party's decision to withdraw that subpoena.  The cases might apply if Miami-Luken withdrew its request for enforcement of the subpoena, but clearly that is not the case.

The Administrator may not agree with this Court's decision to enforce the subpoena issued by the CALJ, but he cites no authority to overturn it at this late

---

[8]*Cf id.* at 1170 (Ginsburg, J., concurring in part and dissenting in part on grounds that a lower court's resolution of a question of law is ordinarily reviewable de novo on appeal).

juncture. After this Court reviewed and issued a final order of enforcement, the DEA Administrator could not "quash" the same subpoena on grounds that this Court had already rejected. "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order 'if a significant change either in factual conditions or in law renders enforcement detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo* v. *Inmates of Suffolk County Jail,* 502 U.S. 367, 384 (1992)).

The DEA has failed to carry its heavy burden of showing a significant change in law or fact. The undersigned does not agree that the DEA Administrator's attempt to effectively overturn this Court's decision by quashing the subpoena on grounds previously rejected by the Court can constitute a significant change in law or fact. *See Northridge Church v. Charter Twp. Of Plymouth*, 647 F.3d 606, 618 (6th Cir. 2011) (denying Rule 60(b)(5) motion based on party seeking to escape judgment based on its own voluntary actions). The DEA attempts to distinguish *Northridge* on grounds that it involved the application of Rule 60(b)(5) to a consent judgment, which implicates principles of contract law. However, the *Northridge* court expressly rejected the notion that the application of Rule 60(b)(5) differs in that context. *Id.*, 647 F.3d at 613.

The DEA further argues that enforcement of this Court's Order is not equitable because the "documents are no longer needed for the administrative adjudicatory hearing." (Doc. 27 at 5). Again, the cited authority, involving cases in which a motion to enforce a subpoena is mooted by the subsequent cancellation of the hearing, is inapposite. *See e.g., Penn, LLC v. Prosper Bus. Devel. Corp.*, 2011 WL 3204723 at \*4 (S.D. Ohio July 27, 2011). In contrast to those cases, it is abundantly clear that the

13

CALJ and the DEA fully intend to proceed with the scheduled revocation hearing for which the subpoena was issued.

Finally, the DEA contends that the DEA Administrator has the authority to overrule his subordinate's decision to issue the subpoena independent of any interlocutory appeal. The DEA reasons that an ALJ's authority flows from the Administrator, and it is the Administrator who ultimately decides whether to adopt or reject the ALJ's proposed revocation decision. However, the regulatory structure ensures a measure of decisional independence by the ALJ. *See* 21 C.F.R. § 1316.52 (providing that ALJ has the duty to conduct a "fair hearing" with "all powers necessary" including subpoena power); *see also Harlene v. Drug Enforcement Admin.*, 148 F.3d 1199 (10th Cir. 1998) (discussing due process requirements and judicial independence under the APA). In addition, the regulations prohibit interlocutory review by the DEA Administrator absent the ALJ's consent, which was denied here. Rulings of the ALJ "may not be appealed to the Administrator prior to his consideration of the entire hearing, except with the consent of the [ALJ] and where he certifies on the record or in writing that the allowance of an interlocutory appeal is clearly necessary to prevent exceptional delay, expense, or prejudice to any party or substantial detriment to the public interest." 21 C.F.R. § 1316.62. Regardless of how much the DEA Administrator rails against the wisdom of the CALJ in denying interlocutory appeal of the issues presented, the DEA cannot contest the CALJ's authority to make that decision.

Still, the DEA insists that Miami-Luken's position (that the Administrator lacked authority to set aside the CALJ's order/subpoena after this Court's Order of enforcement) "would elevate a DEA ALJ, who is a subordinate official to the DEA Administrator, and who erred in refusing to certify this matter for interlocutory appeal,

above the head of the agency." (Doc. 30 at 5). It is unnecessary to wade too deeply into the scope of the DEA Administrator's authority over an ALJ who has declined interlocutory review prior to a judicial appeal, because that is not the issue before this Court. To the extent that the DEA Administrator possesses authority to overturn the CALJ's denial of interlocutory appeal or to independently quash an adjudicatory subpoena issued by the CALJ, any such authority did not survive issuance of this Court's Order. To paraphrase the DEA's own argument, to allow the DEA Administrator to take such an approach would elevate the DEA Administrator over this Court. In the orderly administration of justice, appeals from agency decisions under the APA flow in one direction – from the agencies to the federal courts – not the other way around. *See generally Mefford v. Garner*, 383 F.2d 748, 758 (6th Cir. 1967) (holding that it is the duty of an agency to comply with the mandate of the court without variation and without departing from such directions, and that if a cause is remanded for a specified purpose, any inconsistent proceeding is error).

After this Court's contrary ruling, the DEA lacked authority to overrule this Court and conclude that the documents are not relevant, material, or necessary for the revocation hearing. The DEA's stance amounts to an attempt to relitigate the issues. "Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof." *Jinks v. Allied Signal Inc.*, 250 F.3d 381, 385 (6th Cir. 2001); *accord Casasanta v. Federal Nat. Mortg. Ass'n*, 2014 WL 1977038 at *3 (E.D. Mich. May 15, 2014)(Rule 60(b)(5) motion denied because plaintiff was not entitled to a "do-over").

### III.    Conclusion and Recommendation

While the undersigned has explained the basis for recommending denial of the Defendant's Rule 60(b)(5) motion at this point in time, the undersigned is well aware of the Plaintiff's independent challenge to the DEA Administrator's May 12, 2017 Order that remains pending in the Sixth Circuit Court of Appeals.  In the event that the Sixth Circuit affirms the DEA Administrator's Order quashing the subpoena that underlies this Court's Order, then the DEA will be able to carry its burden under Rule 60(b) to show that enforcement of the April 21, 2017 Order is no longer equitable.  However, as the matter currently stands, the DEA has fallen short of that burden.

Accordingly, Defendant DEA's Rule 60(b)(6) motion seeking relief from this Court's April 21, 2017 final Order and to set aside the Court's judgment (Doc. 27) should be DENIED, without prejudice to renew (if appropriate) following the conclusion of the related case in the Sixth Circuit.

 /s Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MIAMI-LUKEN, INC.,                                      Case No. 1:16-mc-012

         Plaintiff,                                      Dlott, J.
                                                        Bowman, M.J.

   v.

UNITED STATES
DEPARTMENT OF JUSTICE,
DRUG ENFORCEMENT ADMINISTRATION

         Defendant.

<b>NOTICE</b>

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

17